ORIGINAL

Approved: _Elizabeth A. Espinosa_
ELIZABETH A. ESPINOSA
Assistant United States Attorney

Before:    THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

19MAG10119

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :    SEALED COMPLAINT
                                   :
            - v. -                 :    Violations of
                                   :    18 U.S.C.
HAI LONG HUANG,                    :    §§, 2320 and 2
                                   :
                                   :    COUNTY OF OFFENSE:
                                   :    NEW YORK
            Defendant.             :
                                   :
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

ADEBOLA AWE, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

**COUNT ONE**
(Trafficking in Counterfeit Goods)

1.    From at least in or around 2011 up to and including in or around October 2019, in the Southern District of New York and elsewhere, HAI LONG HUANG, the defendant, knowingly and intentionally did traffic and attempt to traffic in goods and services, and did knowingly use a counterfeit mark on and in connection with such goods and services, to wit, HUANG distributed counterfeit Timberland boots and counterfeit UGG boots.

(Title 18, United States Code, Sections 2320(a)(1) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.    I am a Special Agent with HSI and a member of the joint New York City Police Department ("NYPD") and HSI Border Enforcement and Security Task Force. I have been personally involved in the investigation of this matter, and I base this affidavit on that

1

experience, on my conversations with other law enforcement officials, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Since approximately October 2018, NYPD and HSI have been investigating HAI LONG HUANG, the defendant, and others known and unknown, who is involved in a scheme to traffic counterfeit Timberland boots ("Counterfeit Timberland Boots") and counterfeit UGG boots ("Counterfeit UGG Boots").

4. Based on my training and experience, involvement in this investigation, and review of publicly available information, I know that Timberland's boots are some of the most popular boots in circulation. Timberland has produced its boots since approximately 1973. Depending on the version, Timberland boots can cost from approximately $140 up to approximately $400.

5. Based on my training and experience, involvement in this investigation, and review of publicly available information, I know that UGG's boots are also among the most popular winter boots in circulation. Depending on the version, UGG boots can cost from approximately $140 up to approximately $595.

## IMPORTATION OF GENERIC AND COUNTERFEIT GOODS

6. Based on my involvement in the investigation and my review of United States customs documents and shipping records, I know that HAI LONG HUANG, the defendant, imports containers filled with boots manufactured in China. Some of these boots are produced to resemble Timberland and UGG boots in design and color, but significantly, are "generic" (the "Generic Timberlands" and "Generic UGGs"). That is, these boots are imported into the United States without the inclusion of logos that are trademarks registered with the United States Patent and Trademark Office ("USPTO"). Once the Generic Timberlands and Generic UGGs arrive in the United States, they are altered within the New York area to add trademarked logos to the shoes. Once this alteration takes place, the shoes are considered "counterfeit." HUANG also imports boots bearing trademarked logos for Timberland and UGG—that is, counterfeit boots.

2

7. Based on my involvement in the investigation and my review of Customs and Border Protection ("CBP") and publicly available information, I know that Best Return Trading Inc. ("Best") is a business registered with the New York Department of State and that uses an IRS number associated with HAI LONG HUANG, the defendant. Best imported approximately 39 shipping containers from China into the United States between in or around January 2010 and in or around September 2011. The contents of each container were described as "MEN'S WORKING SHOES" or "WOMEN'S BOOTS" or other variations on such descriptions. None of the manifests disclosed the importation of UGG boots. Best was the consignee[1] for each of the containers and the ultimate destination address was listed as HUANG's home address in Queens, New York.

8. Based on my review of CBP documents, I know that on or about May 11, 2011, CBP conducted a lawful inspection of a container imported by Best ("Container-1"). The contents of Container-1 were described as WOMEN'S BOOTS NO SOLID WOOD PACKING MATERIALS" and the destination address matched that of HAI LONG HUANG, the defendant. CPB officials discovered approximately 411 cases (each containing 12 pairs) of counterfeit UGG boots, with a Manufacturer's Suggested Retail Price ("MSRP") of approximately $739,900.00. In or around October 2011, Best was dissolved.

9. Based on my review of publicly available materials, I know that that Kanghansi Inc. ("Kanghansi") is a business registered with the New York Department of State. Kanghansi's address matches that of HAI LONG HUANG, the defendant. HUANG's wife ("Individual-1") is listed as Kanghansi's registered agent.

10. Based on my review of CBP documents, I know that between in or around May 2014 and in or around November 2014, Kanghansi imported approximately 23 shipping containers from China. The contents of the containers were described as "MEN'S WORKING SHOES" and "WOMEN'S BOOTS" and variations of such descriptions. None of the manifests disclosed the importation of UGG boots.

11. Based on my review of CBP documents, I know that on or about September 22, 2014, CBP conducted a lawful inspection of a container imported by Kanghansi ("Container-2") and destined for

---

[1] A consignee is the individual or entity financially responsible for receipt of the given container (i.e. the "buyer" of the goods in the container).

an address that matched that of HAI LONG HUANG, the defendant. The contents of Container-2 were described as "WOMEN'S BOOTS." CBP officials found approximately 1001 cases (each containing 12 pairs) of counterfeit UGG boots with an MSRP of approximately $1,991,880.00.

12. Based on my review of CBP documents, I know that on or about October 10, 2014, CBP conducted a lawful inspection of a container imported by Kanghansi and destined for an address that matched that of HAI LONG HUANG, the defendant. The contents of the container were described as "WOMEN'S BOOTS." CBP officials found approximately 859 cases (each containing 12 pairs) of counterfeit UGG boots with an MSRP of approximately $2,010,060.00. Kanghansi was dissolved in or around December 2014.

13. Based on my review of CBP documents and publicly available information, I know that Chang Shun Trading Inc. ("Chang Shun") is a business registered with New York Department of State with a registered address in Queens, New York, that matches that of HAI LONG HUANG, the defendant. HUANG is listed as the registered agent for Chang Shun.

14. Based on my review of CBP documents, I know that between in or around February 2015 and in or around June 2018, Chang Shun imported approximately 66 shipping containers from China. The contents of each container were described as "MANS WORKING SHOES" or "FOOTWEAR OUT SOLE RUB OR PLAST TEXT UPPER" and variations on such descriptions.

15. Based on my review of CBP documents and my involvement in the investigation, I know that on or about August 29, 2017, and on or about May 31, 2018, CBP officials conducted lawful inspections of containers imported by Chang Shun and found generic Timberland boots. On or about October 10, 2017, CBP officials conducted a lawful inspection of a container imported by Chang Shun and found generic Timberland boots bearing a logo reading "Fangeli."

UNDERCOVER BUYS OF COUNTERFEIT BOOTS

16. Based on my personal knowledge and conversations with other law enforcement agents conducting surveillance, I know that on or about October 25, 2018, law enforcement agents conducted surveillance of HAI LONG HUANG, the defendant, at his home in Queens, New York. Law enforcement officers observed HUANG removing boxes that appeared to contain counterfeit goods from a vehicle ("Vehicle-1") and placing them inside his garage

and a second vehicle ("Vehicle-2"). HUANG then drove Vehicle-2 into Manhattan, New York, and parked Vehicle-2 at the intersection of Delancey Street and Suffolk Street. HUANG then set up two folding tables on the sidewalk on Delancey Street

17. Based on my personal knowledge and conversations with other law enforcement agents conducting surveillance, I know that on or about October 25, 2018, an undercover law enforcement agent ("Undercover Agent-1") purchased of a pair of counterfeit Timberland boots from HAI LONG HUANG, the defendant, at the corner of Delancey Street and Suffolk Street, in Manhattan, New York. Based on my involvement in this investigation, I believe that these boots are counterfeit versions of boots manufactured by Timberland LLC. This opinion is based in part on confirmation that the boots were counterfeit from individuals associated with Timberland. Law enforcement agents removed the Timberland branding plugs on the bottom of the boots and discovered a logo for "Fangeli" underneath.

18. Based on my personal knowledge and conversations with other law enforcement agents, I know that during the course of the undercover buy on or about October 25, 2018, Undercover Agent-1 asked HAI LONG HUANG, the defendant, how much he would charge for a case—12 pairs—of counterfeit Timberland boots. HUANG quoted a price of $511.00. HUANG then provided Undercover Agent-1 with his telephone number in order to arrange the purchase of a case of boots.

19. Based on my personal knowledge and conversations with other law enforcement agents, I know that on or about November 15, 2018, Undercover Agent-1 called HAI LONG HUANG, the defendant, and arranged to purchase a case of counterfeit Timberland boots.

20. Based on my personal knowledge and conversations with other law enforcement agents conducting surveillance, I know that on or about November 16, 2018, Undercover Agent-1 met HAI LONG HUANG, the defendant, on Delancey Street in Manhattan, New York. HUANG removed multiple boxes of counterfeit Timberland boots from Vehicle-2 and provided them to Undercover Agent-1. Undercover Agent-1 gave HUANG $511.00 in exchange for the counterfeit Timberland boots. Law enforcement agents removed the Timberland branding plugs on the bottom of the boots and discovered a logo for "Fangeli" underneath.

21. Based on my personal knowledge and conversations with other law enforcement agents, I know that on or about December 13, 2018, Undercover Agent-1 called HAI LONG HUANG, the defendant, and arranged to purchase 12 pairs of counterfeit Timberland boots and six pairs of counterfeit versions of boots manufactured by UGG.

22. Based on my personal knowledge and conversations with other law enforcement agents conducting surveillance, I know that on or about December 14, 2018, a second undercover agent ("Undercover Agent-2") met HAI LONG HUANG, the defendant, on Delancey Street in Manhattan, New York. HUANG removed several pairs of counterfeit Timberland boots and counterfeit UGG boots from a vehicle and provided them to Undercover Agent-2. Undercover Agent-2 gave HUANG $660.00 in exchange for the counterfeit Timberland and UGG boots. Law enforcement agents removed the Timberland branding plugs on the bottom of the boots and discovered "Fangeli" logo underneath.

23. Based on my involvement in the investigation and my conversations with other law enforcement agents conducting surveillance, I know that on or about August 22, 2019, law enforcement agents observed HAI LONG HUANG, the defendant, arrive at the corner of Delancey Street and Suffolk Street in Manhattan, New York, and remove boxes that appeared to contain counterfeit boots from Vehicle-2. An undercover agent approached HUANG and purchased one case containing approximately 12 pairs of counterfeit Timberland boots for approximately $515. After the transaction, law enforcement agents removed the Timberland plugs from the bottom of the boots and discovered a "Fangeli" logo underneath.

24. Based on my involvement in this investigation, I believe that these boots are counterfeit versions of Timberland boots and UGG boots. This opinion is based in part on confirmation that the boots were counterfeit from individuals associated with Timberland and with UGG.

25. Based on the number of containers associated with Best and Kanghansi, I know that HAI LONG HUANG, the defendant, has imported approximately three containers of Counterfeit UGG Boots from Mainland China, each containing approximately 27,252 pairs of Counterfeit UGG Boots. Based on my conversations with UGG representatives, I have learned that if the boots in question were authentic UGGs, they would retain for approximately on average $174 per pair. Accordingly, I estimate the loss attributable to HUANG as a result of the Counterfeit UGG Boots is at least approximately $4,741,840.

26. Based on the number of containers associated with Shang Shun imported per the CBP Records as well as my personal inspections of some of those containers, I estimate that HAI LONG HUANG, the defendant, has imported approximately 66 containers of Generic Timberlands from Mainland China, each containing approximately 6000 pairs of Generic Timberlands, that were altered

6

to add Timberland logos after their arrival in the New York area. Based on my conversations with Timberland representatives, I have learned that, if the boots in question were authentic Timberlands they would retail for approximately $190 per pair. Accordingly, I estimate the loss attributable to HUANG as a result of the Counterfeit Timberlands is at least approximately $123 million.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of HAI LONG HUANG, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

ADEBOLA AWE
Special Agent
Department of Homeland Security
Homeland Security Investigations

Sworn to before me this
28 day of October, 2019

THE HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK